IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

HARMON WILLIAMS                                                                                    PLAINTIFF

v.                                            Civil No. 4:20-cv-04079-SOH-BAB

DETECTIVE REYN BROWN;
OFFICER DANIEL OLLER;
and STEPHEN GULICK                                                                              DEFENDANTS

## REPORT AND RECOMMENDATION

Before the Court is Defendant Daniel Oller's Motion for Summary Judgment (ECF No. 71). Plaintiff responded, (ECF No. 91), and Defendant replied to Plaintiff's Response (ECF No. 94). Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, Chief United States District Judge, referred the instant motion to the undersigned for the purpose of making a Report and Recommendation.

### I.   BACKGROUND

Plaintiff is currently incarcerated in the Arkansas Division of Corrections – Tucker Unit in Tucker, Arkansas. His claims in this lawsuit stem from alleged civil rights violations which occurred during his arrest in Hempstead County by officers from the Hope Police Department and Hempstead Count Sheriff's Office. Plaintiff filed his original Complaint on September 15, 2020, (ECF No. 1), and then an Amended Complaint on October 5, 2020, (ECF No. 9).

Plaintiff alleged two claims in his Amended Complaint, but the second claim and some Defendants were initially dismissed at screening pursuant to the Prison Litigation Reform Act, 28 U.S.C. § 1915A(b). (ECF No. 13). This leaves Plaintiff's Claim One against Separate Defendants

1

Sergeant Daniel Oller, Hope Police Department; Special Agent Reyn Brown, Hempstead County Sheriff's Office; and Stephen Gulick, Parole Officer.[1] Separate Defendants Brown and Gulick have filed separate motions for summary judgment which will be addressed by separate report and recommendations.

Plaintiff alleges, in his Claim One that Separate Defendant Oller violated his constitutional rights on October 15, 2019 when he accompanied Separate Defendant Brown to Plaintiff's place of work, unlawfully searched him, and unlawfully arrested him. Specifically, Plaintiff claims:

> On Oct. 15, 2019, approx.. 8:40 am I Harmon Williams, was called into the office at my job by Terry Crabtree and Daniel Hampton, due to another employee Hunter Britten, told them that he had knocked some dust down on me and officer Stephen [G]ulick order to come harass me on my job; which led Det. Reyn Brown and Officer Daniel Oller to violate my 4th, 5th, 8th and 14th Amendments. 1) They first detain me off false accusations claiming they received a call stating I was selling drugs from the Feed Mill. 2) They arrest me off a false investigation, no probable cause was establish nor was there any proof to support their allegations. 3) They false imprison me with off of false reports and falsified documents. After . . . making it to the Hempstead County Jail, where we met up with my parole officer Stephen Eulick, who informed me that Det. Reyn Brown, claimed to have retrieved "meth" from me that I've never seen nor had. Stephen [G]ulick, never attain a "White Warrant" from the state to hold me in jail. I later found out (6) days by another parolee who return from a parole hearing; that goes by the name Lemon Scott, informed me that I had been deferral by the state and my parole officer Stephen [G]ulick, withheld the information causing me to lose my job at the Feed Mill after causing me to miss over (3) consecutive days over regulation abusing this public trust.[2]

(ECF No. 9, p. 8) (errors in original).

Plaintiff sues Separate Defendant Oller in both his individual and official capacities. (ECF No. 9, p. 5). Plaintiff requests both compensatory and punitive damages for relief. *Id.* at 14.

---

[1] Plaintiff's Claim One against all remaining Separate Defendants was also administratively stayed pursuant to the *Younger* doctrine until Plaintiff's criminal charges in Arkansas State Court were resolved. (ECF No. 13, pp. 3-4). This case was reopened on September 22, 2021 once Plaintiff's criminal case was resolved. (ECF No. 16).

[2] There are additional facts alleged in Plaintiff's Claim One, but they relate solely to Plaintiff's claims against the Separate Defendants which were dismissed at screening. (ECF No. 9, p. 8). Accordingly, the Court finds them irrelevant to Separate Defendant Oller's Motion for Summary Judgment.

Separate Defendant Oller filed his Motion for Summary Judgment on November 20, 2023 along with a Brief in Support and Statement of Undisputed Facts. (ECF Nos. 71, 72, 73). In his Motion, Separate Defendant Oller argues: (1) he can only be liable for his own conduct and he did not search, arrest, or imprison Plaintiff on October 15, 2019, (ECF No. 72, p. 4); alternatively, (2) Plaintiff's unlawful detention and search claim fails as a matter of law, (ECF No. 72, p. 4-6); (3) Plaintiff's unlawful arrest claim fails as a matter of law, (ECF No. 72, p. 6); (4) Plaintiff's unlawful imprisonment claim fails as a matter of law, (ECF No. 72, p. 8); (5) Plaintiff's Fifth and Eighth Amendment claims are misplaced and should be dismissed, (ECF No. 72, p. 9); (6) Separate Defendant Oller is entitled to qualified immunity, (ECF No. 72, p. 10); and (7) Plaintiff's official capacity claim fails as a matter of law, (ECF No. 72, p. 11).

Separate Defendant Oller also offers the following rendition of the facts. On October 15, 2019, Plaintiff was on parole from the Arkansas Division of Corrections with a signed warrantless search waiver on file. Plaintiff was under active supervision with his parole officer, Separate Defendant Gulick. (ECF Nos. 71-1, p. 2). The warrantless search waiver, signed by Plaintiff, from the Arkansas Department of Corrections reads:

> As a condition of my supervised parole or probation, I agree to allow any Arkansas Community Correction officer, or any certified law enforcement officer, to conduct a warrantless search of my person, place of residence, or motor vehicle at any time, day or night, whenever requested by the Arkansas Community Correction officer, or certified law enforcement officer.
>
> I understand that a warrantless search based on this waiver must be conducted in a reasonable manner but does not need to be based on a clearly expressed suspicion that I am committing or I have committed a criminal offense.
>
> Arkansas law code annotated § 16-93-106 requires this waiver to be signed by a person who is placed on supervised probation or is released on parole under this section as a condition of his or her supervised parole or probation.

(ECF No. 71-1, p. 9).

On October 15, 2019, Separate Defendant Oller, a Sergeant with the Hope Police Department, was contacted by Separate Defendant Brown, a special agent for the Hempstead County Sheriff's Office. Separate Defendant Brown requested Defendant Oller's help with a felony drug investigation involving Plaintiff. (ECF No. 71-1, p. 24). Separate Defendant Brown informed Defendant Oller he was contacted by Separate Defendant Gulick, Plaintiff's parole officer, who stated an unknown individual who worked at Tyson Feed Mill with Plaintiff called to say Plaintiff was "slinging dope" and had some on his possession at the Tyson Feed Mill. (ECF Nos. 71-1, pp. 13, 15, 25).

Separate Defendants Oller and Brown were both members of the Eighth North Drug Task Force ("DTF") which is compromised of employees from Hope Police Department, Hempstead County Sheriff's Office, Nevada County Sheriff's Office, and Prescott Police Department. (ECF No. 71-1, p. 24). Separate Defendant Oller was aware that Plaintiff had a warrantless search waiver on file as part of his parole. *Id.* at 25.

Once Defendants Oller and Brown arrived at the Feed Mill they made contact with Plaintiff while he worked. Separate Defendant Oller took a piece of work equipment from Plaintiff and asked Plaintiff if he had anything illegal on his person. Plaintiff responded he did not. Plaintiff then put his arms out in front of his body and told the officers to "hold on." Separate Defendants Brown and Oller then grabbed Plaintiff's wrists to gain control over Plaintiff for safety. Separate Defendant Brown then explained to Plaintiff he would perform a parole search pursuant to Plaintiff's warrantless search waiver. Separate Defendant Brown also informed Plaintiff he was being detained and placed Plaintiff in handcuffs. (ECF No. 71-1, p. 25).

Separate Defendant Brown then searched Plaintiff's pockets and handed the contents to Separate Defendant Oller. Separate Defendant Oller determined that a white powdery substance

4

in a plastic bag from Plaintiff's pockets was methamphetamine. *Id*. at 26. Separate Defendant Brown then placed Plaintiff under arrest and escorted Plaintiff to his patrol vehicle while Separate Defendant Oller collected Plaintiff's belongings from the Feed Mill. *Id.* The video footage of Plaintiff's search and arrest, from Separate Defendant Brown's body camera, is consistent with Separate Defendant Oller's rendition of the facts. (ECF No. 71-1, p. 33).

The bag of white powder pulled out of Plaintiff's pocket by Separate Defendant Brown was tested by the Arkansas State Crime Laboratory and determined to be 0.9340 grams of methamphetamine. (ECF No. 71-1, p. 32). Plaintiff was booked into the Hempstead County Detention Center ("HCDC") for possession of a controlled substance on October 15, 2019. (ECF No. 71-1, p. 34). Plaintiff's charge of possession related to this arrest was later dismissed based on a negotiated plea of guilty to other subsequent charges. *Id*. at 36-41.

In response, Plaintiff filed a document titled "Plaintiff Statement of Disputed Facts." (ECF No. 91). This document is properly sworn and subscribed and consist of twenty-seven (27) numbered paragraphs. *Id.* These numbered paragraphs do not correspond to Separate Defendant Oller's Statement of Undisputed Fact paragraphs. The Response includes legal arguments rather than factual disputes. *Id.*

Plaintiff argues Separate Defendant Oller lacked probable cause to search him at his workplace on October 15, 2019. (ECF No. 91, p. 1). Plaintiff also argues searches are not constitutional under a parolee search waiver when they are conducted for the purposes of law enforcement instead of parole supervision. (ECF No. 91, pp. 1-2). Further, Plaintiff argues the consent in his waiver only allows warrantless searches if reasonable grounds exist. (ECF No. 91, p. 3). According to Plaintiff, police officers cannot initiate searches on parolees under any circumstances they would not be able to legally search other citizens. (ECF No. 91, p. 3).

Moreover, according to Plaintiff the search conducted on him was a "' fishing expedition' that was arbitrary and capricious" using the "parole officer 'as a cat's paw'". (ECF No. 91, p. 3). Plaintiff argues his consent is only valid if there were reasonable grounds to investigate whether he violated the terms of his parole, and the search was conducted by his parole officer. (ECF No. 91, p. 3). Specifically, Plaintiff argues:

> A parole search can not be a mere subterfuge enabling the police to avoid having to obtain a search warrant often times characterized as using parole officers as stalking horse for the police. We do not consider it a strained interpretation of the waiver to extend it to arrests, even though an arrest is a more intrusive invasion of Fourth Amendment Rights than a detention.

(ECF No. 91, p. 4). While Plaintiff does not attribute any of his legal conclusions listed above to specific legal precedent, he does provide two case he argues which generally support his position: (1) Fl*orida v. J.L. (2000) 529 U.S. 266*; and (2) "*People v. Sanders*, (2003) 31 Cal. 4th 318, 2 Cal. Rpte 3d 630." (ECF No. 91, p. 5).

Finally, Plaintiff alleges Separate Defendant Oller "[b]efore coming to the Feed Mill . . . made no attempt to justify his reason of action by joining Co Defendant Brown in a clueless investigation." (ECF No. 91, p. 2). Plaintiff goes on to allege there is no written incident report to explain his detention, and no evidence presented to support the allegation Plaintiff was engaged in selling drugs from the Feed Mill. *Id*. Separate Defendant Oller did not obtain surveillance from the Feed Mill and never started the warrant process. *Id.* Plaintiff also argues the body camera footage does not offer any evidence on the reliability of the information provided to Defendant Brown by the unknown informant. *Id.* at 4.

Separate Defendant Oller replied arguing, Plaintiff failed to comply with Federal Rule of Civil Procedure 56 and Local Rule 5.5(c)(2) with his Response. Plaintiff did not list the specific facts he disputes and did not support any of his legal conclusions with evidence. (ECF No. 94, p.

6

3). Furthermore, Defendant Oller argues the case law relied on by Plaintiff is nonbinding and distinguishable. *Id.* at 4. The Court notes all material facts on the summary judgment record are undisputed by Plaintiff. (ECF No. 94).

## II. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607. "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. at 610. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Under § 1983, a defendant may be sued in either his personal capacity, or in his official capacity, or claims may be stated against a defendant in both his personal and his official capacities. The type of conduct that is actionable and the type of defense available depend on

7

whether the claim is asserted against a defendant in his official or individual capacity. *See Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998) (internal citations omitted). "Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself." *Id.* Personal capacity claims "are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense" to these individual capacity claims. *Id.* To state a claim under 42 U.S.C. § 1983, Plaintiff must allege that the defendant acted under color of state law, and that the actor violated a right, privilege, or immunity secured by the Constitution. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir.1999).

### III. DISCUSSION

Plaintiff alleges his search, arrest, and imprisonment on October 15, 2019, violated his constitutional rights in his Amended Complaint (ECF No. 9). Plaintiff's Amended Complaint can also be read to include a claim for an unreasonable stop or detention. *Id.* While Separate Defendant Oller makes multiple arguments, the Court need only address his arguments that Plaintiff's claims against him fail as a matter of law because (1) he did not search, arrest, or imprison Plaintiff; and (2) even if Separate Defendant Oller was responsible for Plaintiff's stop and detention Plaintiff's Fourth Amendment rights were not violated.[3] (ECF No. 72).

Plaintiff fails to dispute Separate Defendant Oller's first argument that he was not the searching, arresting, or imprisoning officer. Further, he does not dispute or contest his arrest or

---

[3] The Court need not address Defendant Oller's argument of qualified immunity as it determines Plaintiff's claim fails to state a constitutional violation.

imprisonment related to his claim against Defendant Oller. Instead, he argues: (1) Defendant Oller lacked probable cause to investigate him; (2) his warrantless search waiver was not consent for the purposes of law enforcement or investigation; (3) his warrantless search waiver only provided consent for searches when reasonable grounds existed; and (4) his warrantless search waiver only applied to violations of his parole and searches by his parole officer. (ECF No. 91).

### A. Direct Responsibility

Separate Defendant Oller first argues he is entitled to summary judgment because he did not search, arrest, or imprison Plaintiff. "Liability under Section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) (citing *Rizzo v. Goode*, 423 U.S. 362, 370 (1976)). To state a cognizable Section 1983 claim, a complaint must set forth specific factual allegations showing what each named defendant allegedly did, or failed to do, that violated the Plaintiff's constitutionally protected rights.

Plaintiff's Claim One is that he was illegally searched, arrested, and imprisoned. (ECF No. 9). The record here is clear that Separate Defendant Oller did not participate in any of these actions. Instead, Separate Defendant Oller was called in to assist Separate Defendant Brown in investigating Plaintiff's potential drug selling activities at the Feed Mill. Separate Defendant Oller swears in his affidavit that he did not search or arrest Plaintiff. (ECF No. 71-1, p.26). Plaintiff does not dispute this assertion and the summary judgment record supports Separate Defendant Oller's assertion with the video footage of the search and arrest, Separate Defendant Brown's arrest warrant, and Plaintiff's booking detail from Hempstead County. (ECF No. 71-1, pp. 15-23). Furthermore, the record is clear that Separate Defendant Brown, a Hempstead County Sheriff's Deputy, arrested Plaintiff and Plaintiff was incarcerated by Hempstead County, not the City of Hope. *Id*. Accordingly, Plaintiff's claims against Separate Defendant Oller that he was unlawfully

searched, arrested, and imprisoned fail as a matter of law as Separate Defendant Oller did not commit or cause the actions of which Plaintiff complains.

### B.  Reasonable Suspicion

However, to the extent Plaintiff is claiming Separate Defendant Oller did not have reasonable suspicion to stop and investigate Plaintiff and then search him, the Court will conduct a reasonable suspicions analysis based on the summary judgment record.  Separate Defendant Oller argues even if he had searched Plaintiff, such actions would not have violated Plaintiff's Fourth Amendment rights because Plaintiff signed the warrantless search waiver, and Separate Defendant Oller possessed reasonable suspicion to initiate the stop and search.  The Court agrees.[4]

The Fourth Amendment provides for "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]"  U.S. Const. amend IV. To assert a violation of the Fourth Amendment, Plaintiff must possess a legitimate expectation to privacy.  *United States v. Green*, 275 F.3d 694, 698 (8th Cir. 2001).  "To establish a legitimate expectation of privacy, [Plaintiff] must demonstrate: (1) a subjective expectation of privacy; and (2) that this expectation is one that society is prepared to recognize as objectively reasonable." *United States v. Muhammad*, 58 F.3d 353, 355 (8th Cir. 1995).  Parolees such as Plaintiff, however, have significantly curtailed expectations of privacy.

The State of Arkansas requires parolees to sign warrantless search waivers.  Specifically, the statute provides as follows:

> (a)(1) A person who is placed on supervised probation or is released on parole under this chapter is required to agree to a waiver as a condition of his or her supervised probation or parole that allows any certified law enforcement officer or Division of Community

---

[4] The Court is not making a recommendation on whether or not the warrantless search waiver negates reasonable suspicion requirements for stops and detention under the Fourth Amendment. Instead, the Court simply notes the undisputed facts here support a finding of reasonable suspicion. *See infra,* Section B, p. 13.

> Correction officer to conduct a warrantless search of his or her person, place of residence, or motor vehicle at any time, day or night, whenever requested by the certified law enforcement officer or division officer.
>
> (2) A warrantless search that is based on a waiver required by this section shall be conducted in a reasonable manner but does not need to be based on an articulable suspicion that the person is committing or has committed a criminal offence.

Ark. Code Ann. § 16-93-106(a)(1)-(2).

The Arkansas Court of Appeals recently held the statute to be constitutional under both the Arkansas and United States Constitutions. *Clingmon v. State*, 620 S.W.3d 184, 190 (Ark. App. 2021) (explaining the statutory language is clear that reasonable suspicion is not required and upholding a suspicionless search of a parolee's home). Moreover, the United States Supreme Court upheld a similar statute authorizing a suspicionless search of a parolee's person. In *Samson v. California*, 547 U.S. 843 (2006), the California statute at issue required parolees to " 'agree in writing to be subject to search or seizure by a parole officer or other peace officer ..., with or without a search warrant and with or without cause.' " *Id.* at 846. The Supreme Court concluded a condition of release could "so diminish or eliminate a released prisoner's reasonable expectation of privacy that a suspicionless search by a law enforcement officer would not offend the Fourth Amendment." *Id* at 847. Regarding the expectation of privacy, the Court noted that parole was "an established variation on imprisonment" on which the statute imposed a clearly stated warrantless search condition. *Id.* at 852. Therefore, the Court "conclude[d] that petitioner did not have an expectation of privacy that society would recognize as legitimate." *Id.* at 852. The Court further observed that the State "has an 'overwhelming interest' in supervising parolees because 'parolees ... are more likely to commit future criminal offenses.' " *Id.* at 853 (quoting *Pennsylvania Bd. of Probation and Parole*, 524 U.S. 357, 365 (1998)). The Court held "the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee." *Id.* at 857.

Here, Plaintiff does not dispute he executed a valid warrantless search waiver as a condition of his parolee pursuant to Ark. Code Ann. § 16-93-106(a)(1)-(2). Such signed waiver is on the summary judgment record and quoted above. (ECF No. 71-1, p. 9). Furthermore, Plaintiff does not dispute his warrantless search waiver mirrors the language held constitutional in *Clingmon* by the Arkansas Court of Appeals, and by the United States Supreme Court in *Samson*. Accordingly, the Court finds no reasonable suspicion was required to conduct the search of Plaintiff's person at his workplace. Just as in *Clingmon* and *Samson,* Plaintiff agreed in his waiver to be searched at any time by any law enforcement officer without reasonable suspicion. (ECF No. 71-1, p. 9). Lastly, as explained in *Samson* Plaintiff had no reasonable expectation of privacy in his person while on parole and under a warrantless search waiver. *See Samson*, 547 U.S. at 852. Therefore, his Fourth Amendment rights were not violated through his detention and search.

Plaintiff did not offer any facts to distinguish this case from either *Clingmon* or *Samson*. Instead, Plaintiff cites to *Florida v. J.L.*, 529 U.S. 266 (2000) and *People v. Sanders*, 31 Cal. 4th 318 (Cal. 2003) in support of his contentions that Separate Defendant Oller could not stop him and search him pursuant to his warrantless search waiver for any other purpose than a suspected parole violation and Separate Defendant Oller needed probable cause or reasonable suspicion to stop him at his work to investigate and conduct the search. However, *Florida v. J.L* does not involve a parolee or a warrantless search waiver. *Florida,* 529 U.S. at 268. Instead, it involves only the question of whether an anonymous tip that an unknown individual standing at a bus stop possessed a handgun created sufficient reasonable suspicion to stop and search said individual. *Id.* That set of facts is distinguishable from the facts here. First, and most notably, Plaintiff was known to Separate Defendant Oller as a parolee with an existing warrantless search waiver Additionally, while the record is unclear as to the exact identity of the tipster it is undisputed that it was a co-

12

worker of Plaintiff at Plaintiff's place of employment, the Feed Mill, someone who would have reliable knowledge of Plaintiff's activities at the Feed Mill.

The Court also notes Plaintiff makes conclusory arguments in his Response regarding the reliability of the information provided to Separate Defendant Oller. First, Plaintiff argues Defendant Oller did not attempt to "justify" his joining Defendant Brown in the "clueless investigation." (ECF No. 91, p. 2). Plaintiff goes on to allege there is no written incident report to explain his detention, and no evidence presented to support the allegation Plaintiff was engaged in selling drugs from the Feed Mill. *Id.* However, Separate Defendant Oller is entitled to rely upon the information provided to him by Defendant Brown when he was called to assist in investigating Plaintiff. *See Doran v. Eckold,* 409 F.3d 958, 965 (8th Cir. 2005) (officers may reasonably rely on information provided by other law enforcement individuals). Therefore, if reasonable suspicion was required to stop and investigate Plaintiff at his workplace such requirement was satisfied. *See Terry v. Ohio,* 392 U.S. 1 (1968). *See also United States v. Mosley,* 878 F.3d 246, 252-53 (8th Cir. 2017) (reasonable suspicion may be based on information provided by third parties so long as it bears some indicia of reliability); *United States v. Maltais,* 403 F.3d 550, 554 (8th Cir. 2005) (holding the basis for reasonable suspicion of criminal activity to warrant a *Terry* stop is determined in light of the totality of the circumstances known to the officer).

Further, while the second case cited by Plaintiff, does in fact address the issue of warrantless searches of parolees, the case was decided by the Supreme Court of California. *See People v. Sanders,* 31 Cal. 4th 318 (Cal. 2003). Such decisions are not binding on this Court and are unpersuasive when there exists binding precedent with similar fact patterns such as *Clingmon* and *Samson.* Accordingly, the Court will not rely on *People v. Sanders* herein.

The Court notes Plaintiff also argues his waiver only authorized a warrantless search by his parole officer. However, the waiver on its face authorizes any law enforcement officer to search Plaintiff without a warrant, and as explained above, this language has been deemed constitutional by the Arkansas Court of Appeals and the United States Supreme Court.

Accordingly, Plaintiff's Claim One as to Defendant Oller regarding the stop and search fails as a matter of law.[5]

### C. Official Capacity

Since Plaintiff has failed to state an individual claim against Separate Defendant Oller, he cannot maintain an official capacity claim against the City of Hope, Separate Defendant Oller's employer. *See Morris v. Cradduck,* 954 F.3d 1055, 1060 (8th Cir. 2020) *Sanders v. City of Minneapolis, Minn.,* 474 F.3d 523, 527 (8th Cir. 2007) (citing *City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986)). Furthermore, "[c]laims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself." *Id.* Plaintiff did not cite or claim any policies or procedures of the Hope Police Department or the City of Hope, employer of Separate Defendant Oller, violated his constitutional rights.[6]

---

[6] The Court notes Plaintiff listed the Fifth, Eighth, and Fourteenth Amendments in his Amended Complaint, however, the facts alleged only stated a Fourth Amendment claim. Accordingly, the Court need not address any additional amendments herein.

## IV. CONCLUSION

For the foregoing reasons, I recommend Separate Defendant Oller's Motion for Summary Judgment (ECF No. 71) be **GRANTED** and all claims asserted against Separate Defendant Oller be **DISMISSED with prejudice**.

**Referral Status: This case should remain referred at this time.**

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger *de novo* review by the district court.**

**DATED** this **6th day of September 2024**.

/s/ *Barry A. Bryant*
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE