IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

HARMON WILLIAMS        .                                    PLAINTIFF


v.                              Civil No. 4:20-cv-04079-SOH-BAB


DETECTIVE REYN BROWN;
OFFICER DANIEL OLLER;
and STEPHEN GULICK                                    DEFENDANTS


**<u>REPORT AND RECOMMENDATION</u>**

Before the Court is Defendant Reyn Brown's Motion for Summary Judgment (ECF No. 78). Plaintiff has responded. (ECF No. 93). Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, Chief United States District Judge, referred the instant motion to the undersigned for the purpose of making a Report and Recommendation.

## I.      BACKGROUND

Plaintiff is currently incarcerated in the Arkansas Division of Corrections – Tucker Unit in Tucker, Arkansas. His claims in this lawsuit stem from alleged civil rights violations which occurred during his arrest in Hempstead County by officers from the Hope Police Department and Hempstead Count Sheriff's Office. Plaintiff filed his original Complaint on September 15, 2020, (ECF No. 1), and then an Amended Complaint on October 5, 2020, (ECF No. 9).

Plaintiff alleged two claims in his Amended Complaint, but the second claim and some Defendants were initially dismissed at screening pursuant to the Prison Litigation Reform Act, 28 U.S.C. § 1915A(b). (ECF No. 13). This leaves Plaintiff's Claim One against Separate Defendants Sergeant Daniel Oller, Hope Police Department; Special Agent Reyn Brown, Hempstead County

1

Sheriff's Office; and Stephen Gulick, Parole Officer.[1]  Separate Defendants Oller and Gulick have filed separate motions for summary judgment.  The Court previously issued a Report and Recommendation on Defendant Oller's Motion for Summary Judgment.  (ECF No. 95).  The Court will address Defendant Gulick's Motion for Summary Judgment by separate report and recommendation.

Plaintiff alleges, in his Claim One that Separate Defendant Brown violated his constitutional rights on October 15, 2019 when he accompanied Separate Defendant Oller to Plaintiff's place of work, unlawfully detained, searched, and arrested him, and then falsely imprisoned him.  Specifically, Plaintiff claims:

> On Oct. 15, 2019, approx.. 8:40 am I Harmon Williams, was called into the office at my job by Terry Crabtree and Daniel Hampton, due to another employee Hunter Britten, told them that he had knocked some dust down on me and officer Stephen [G]ulick order to come harass me on my job; which led Det. Reyn Brown and Officer Daniel Oller to violate my 4th, 5th, 8th and 14th Amendments. 1) They first detain me off false accusations claiming they received a call stating I was selling drugs from the Feed Mill. 2) They arrest me off a false investigation, no probable cause was establish nor was there any proof to support their allegations. 3) They false imprison me with off of false reports and falsified documents. After . . . making it to the Hempstead County Jail, where we met up with my parole officer Stephen Eulick, who informed me that Det. Reyn Brown, claimed to have retrieved "meth" from me that I've never seen nor had.  Stephen [G]ulick, never attain a "White Warrant" from the state to hold me in jail.  I later found out (6) days by another parolee who return from a parole hearing; that goes by the name Lemon Scott, informed me that I had been deferral by the state and my parole officer Stephen [G]ulick, withheld the information causing me to lose my job at the Feed Mill after causing me to miss over (3) consecutive days over regulation abusing this public trust.[2]

---

[1] Plaintiff's Claim One against all remaining Separate Defendants was also administratively stayed pursuant to the *Younger* doctrine until Plaintiff's criminal charges in Arkansas State Court were resolved.  (ECF No. 13, pp. 3-4).  Plaintiff moved  to reopen the instant civil case after the State of Arkansas dismissed the charges against him without a finding of guilt.  (ECF No. 14, p. 2). This case was reopened on September 22, 2021 once Plaintiff's criminal case was resolved.  (ECF No. 16).

[2] There are additional facts alleged in Plaintiff's Claim One, but they relate solely to Plaintiff's claims against the Separate Defendants who were dismissed at screening.  (ECF No. 9, p. 8; ECF No. 13).  Accordingly, the Court finds them irrelevant to Separate Defendant Brown's Motion for Summary Judgment.

(ECF No. 9, p. 8) (errors in original).

Plaintiff sues Separate Defendant Brown in both his individual and official capacities. (ECF No. 9, p. 5). Plaintiff requests both compensatory and punitive damages for relief. *Id.* at 14.

Separate Defendant Brown filed his Motion for Summary Judgment on December 4, 2023 along with a Brief in Support and Statement of Undisputed Facts. (ECF Nos. 78, 79,, 81). In his Motion, Separate Defendant Brown argues: (1) his stop of Plaintiff on October 15, 2019 was supported by reasonable suspicion and lawful; (2) his search of Plaintiff on October 15, 2019 was supported by Plaintiff's search waiver and lawful under the Fourth Amendment, (ECF No. 79, p. 3); (3) his arrest of Plaintiff on October 15, 2019 was supported by probable cause and lawful under the Fourth Amendment, (ECF No. 79, p. 4); (4) Plaintiff's unlawful imprisonment claim fails as a matter of law because there was probable cause to arrest him, (ECF No. 79, p. 4 ); (5) Plaintiff's Fifth and Eighth Amendment claims are misplaced and should be dismissed, (ECF No. 79, p. 5); (6) Separate Defendant Brown is entitled to qualified immunity, (ECF No. 79, p. 5 ); and (7) Plaintiff's official capacity claim fails as a matter of law, (ECF No. 79, p. 6 ).

Separate Defendant Brown did not submit any independent statements of fact or evidence in support of his Motion for Summary Judgment. Instead, pursuant to Federal Rule of Civil Procedure 10(c), Defendant Brown incorporates all arguments made and evidence presented by Separate Defendants Oller and Gulick in their Motions for Summary Judgment, Briefs in Support, and Statements of Undisputed Facts. (ECF No. 79, p. 2; ECF No. 81). Accordingly, the Court utilizes the evidence presented by those Separate Defendants herein.

On October 15, 2019, Plaintiff was on parole from the Arkansas Division of Corrections with a signed warrantless search waiver on file. Plaintiff was under active supervision with his

parole officer, Separate Defendant Gulick. (ECF Nos. 71-1, p. 2). The warrantless search waiver, signed by Plaintiff, from the Arkansas Department of Corrections reads:

> As a condition of my supervised parole or probation, I agree to allow any Arkansas Community Correction officer, or any certified law enforcement officer, to conduct a warrantless search of my person, place of residence, or motor vehicle at any time, day or night, whenever requested by the Arkansas Community Correction officer, or certified law enforcement officer.
>
> I understand that a warrantless search based on this waiver must be conducted in a reasonable manner but does not need to be based on a clearly expressed suspicion that I am committing or I have committed a criminal offense.
>
> Arkansas law code annotated § 16-93-106 requires this waiver to be signed by a person who is placed on supervised probation or is released on parole under this section as a condition of his or her supervised parole or probation.

(ECF No. 71-1, p. 9).

On October 15, 2019 Separate Defendant Gulick received a call from an anonymous individual who stated he worked with Plaintiff at the Tyson Feed Mill in Hempstead County, Arkansas. (ECF No. 75, p. 1). In the call, the informant informed Separate Defendant Gulick that Plaintiff was selling drugs and had drugs in his possession at the Feed Mill while on duty as an employee. *Id.* After receiving this call, Separate Defendant Gulick notified Separate Defendant Brown of all the information given by the informant. *Id.*

Separate Defendants Oller and Brown were both members of the Eighth North Drug Task Force ("DTF") which is comprised of employees from Hope Police Department, Hempstead County Sheriff's Office, Nevada County Sheriff's Office, and Prescott Police Department. (ECF No. 71-1, p. 24). Separate Defendant Oller was aware that Plaintiff had a warrantless search waiver on file as part of his parole. *Id.* at 25. Separate Defendant Brown was also aware of Plaintiff's status as a parolee and his warrantless search waiver prior to engaging with Plaintiff at the Feed Mill. (ECF No. 71-1, p. 33).

4

Once Defendants Oller and Brown arrived at the Feed Mill they contacted Plaintiff while he worked.  Separate Defendant Oller took a piece of work equipment from Plaintiff and asked Plaintiff if he had anything illegal on his person.  Plaintiff responded he did not.  Plaintiff then put his arms out in front of his body and told the officers to "hold on."  Separate Defendants Brown and Oller then grabbed Plaintiff's wrists to gain control over Plaintiff for safety.  Separate Defendant Brown then explained to Plaintiff he would perform a parole search pursuant to Plaintiff's warrantless search waiver.  Separate Defendant Brown also informed Plaintiff he was being detained and placed Plaintiff in handcuffs.  (ECF No. 71-1, p. 25).

Separate Defendant Brown then searched Plaintiff's pockets and handed the contents to Separate Defendant Oller.  Separate Defendant Oller determined that a white powdery substance in a plastic bag from Plaintiff's pockets was methamphetamine.  *Id*. at 26.  Separate Defendant Brown then placed Plaintiff under arrest and escorted Plaintiff to his patrol vehicle while Separate Defendant Oller collected Plaintiff's belongings from the Feed Mill.  *Id.* The video footage of Plaintiff's search and arrest, from Separate Defendant Brown's body camera, is consistent with Separate Defendant Oller's rendition of the facts.  (ECF No. 71-1, p. 33).

The bag of white powder pulled out of Plaintiff's pocket by Separate Defendant Brown was tested by the Arkansas State Crime Laboratory and determined to be 0.9340 grams of methamphetamine.  (ECF No. 71-1, p. 32).  Plaintiff was booked into the Hempstead County Detention Center ("HCDC") for possession of a controlled substance on October 15, 2019.  (ECF No. 71-1, p. 34).  Plaintiff was provided a First Judicial Appearance on October 16, 2019 in front of the Judge Wright, Circuit Judge of Hempstead County.  Judge Wright denied bond at that hearing.  (ECF No. 75-3).  However, Judge Wright released Plaintiff on October 23, 2019 on his

own recognizance. (ECF No. 71-1). Plaintiff's charge of possession related to this arrest was later dismissed based on a negotiated plea of guilty to other subsequent charges. (ECF No. 71-1, pp. 36-41).

In response to Defendant Brown's Motion, Plaintiff filed a document titled "Plaintiff Statement of Disputed Facts." (ECF No. 93). This document is properly sworn and subscribed and consist of twenty-seven (27) numbered paragraphs. *Id.* These numbered paragraphs do not correspond to Separate Defendant Oller's or Defendant Gulick's Statement of Undisputed Fact paragraphs, and these paragraphs do not dispute the facts alleged by any of the Defendants. Instead, the Response includes legal arguments. *Id.*

Plaintiff argues Separate Defendant Brown lacked "probable cause" to search him at his workplace on October 15, 2019 because his search was based only on hearsay and his search waiver on file. (ECF No. 93, p. 1). Plaintiff also argues searches are not constitutional under a parolee search waiver when they are conducted for the purposes of law enforcement instead of parole supervision. (ECF No. 93, pp. 1-2). According to Plaintiff, no warrant process was ever started because Separate Defendant Brown acted only on his belief that a parole agreement justified his warrantless search. (ECF No. 93, pp. 2-3).

Plaintiff then argues Separate Defendant Brown did not present any evidence that his informant was reliable or that he had detailed information that he knew to be more than rumor or suspicion. According to Plaintiff the information known to Separate Defendant Brown was insufficient to establish probable cause for the search. (ECF No. 93, p. 2). Plaintiff argues an uncorroborated telephone call from an anonymous informant, standing alone, is insufficient to establish probable cause to arrest him. *Id.* Finally, Plaintiff argues Separate Defendant Brown did

not obtain any surveillance footage once he arrived at the Feed Mill to corroborate the informant's tip. (ECF No. 93, p. 2).

Furthermore, Plaintiff argues police officers are distinguished from parole officers and cannot initiate searches of parolees unless the circumstances warrant the search of any other citizen. (ECF No. 93, p. 2). Moreover, according to Plaintiff, the search conducted on him was a "' fishing expedition' that was arbitrary and capricious" using the "parole officer 'as a cat's paw'". (ECF No. 93, p. 3). Plaintiff argues his consent waiver is only valid if there were reasonable grounds to investigate whether he violated the terms of his parole, and the search was conducted by his parole officer. (ECF No. 93, p. 3). Specifically, Plaintiff argues:

> A parole search can not be a mere subterfuge enabling the police to avoid having to obtain a search warrant often times characterized as using parole officers as stalking horse for the police. We do not consider it a strained interpretation of the waiver to extend it to arrests, even though an arrest is a more intrusive invasion of Fourth Amendment Rights than a detention.

(ECF No. 93, p. 3). While Plaintiff does not attribute any of his legal conclusions listed above to specific legal precedent, he does provide two case which he argues generally support his position: (1) *Florida v. J.L. (2000) 529 U.S. 266*;" and (2) "*People v. Sanders*, (2003) 31 Cal. 4th 318, 2 Cal. Rpte 3d 630." (ECF No. 93, p. 4).

Plaintiff goes on to argue there was no information in Separate Defendant Brown's incident report evidencing the time he received the anonymous phone call, the time he spent talking to Separate Defendant Gulick, the time it took to contact Separate Defendant Oller and brief him on the situation, or the time between the anonymous tip and Separate Defendant Brown arriving at the feed mill. (ECF No. 93, p. 4). Plaintiff does not explain how the timing relates to the reasonable reliance of the information. Furthermore, Plaintiff argues there is nothing in the record

that justifies Separate Defendant Brown's investigatory "Terry's stop" of Plaintiff at the Feed Mill.

*Id.*

Finally, Plaintiff argues:

Parole Search condition is irrelevant to the determination of lawfulness of the detention and pat search. The constitutionality of the search involving a parolee must be judged by the facts known to the searching officer, officer's subsequent discovery of a search condition cannot be used to justify an otherwise illegal search.

(ECF No. 93, p. 5).

## II. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607. "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* at 610. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Under § 1983, a defendant may be sued in either his personal capacity, or in his official capacity, or claims may be stated against a defendant in both his personal and his official capacities. The type of conduct that is actionable and the type of defense available depend on whether the claim is asserted against a defendant in his official or individual capacity. *See Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998) (internal citations omitted). "Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself." *Id.* Personal capacity claims "are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense" to these individual capacity claims. *Id.* To state a claim under 42 U.S.C. § 1983, Plaintiff must allege that the defendant acted under color of state law, and that the actor violated a right, privilege, or immunity secured by the Constitution. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir.1999).

### III. DISCUSSION

Plaintiff alleges his search, arrest, and imprisonment on October 15, 2019, violated his constitutional rights. (ECF No. 9). Plaintiff's Amended Complaint can also be read to include a claim for an unlawful stop or detention—a *Terry* stop. *Id.* Separate Defendant Brown argues all of Plaintiff's claims fail as a matter of law because his stop, search, arrest, and imprisonment were all lawful. Additionally, Separate Defendant Brown argues even if the stop, search, arrest, and imprisonment violated Plaintiff's constitutional rights, he is entitled to qualified immunity from such claims.

Qualified immunity "shields [a] government official from liability in a section 1983 action unless the official's conduct violates a clearly established right of which a reasonable person would have known." *Brown v. City of Golden Valley*, 574 F.3d 491, 495 (8th Cir. 2009). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341 (1986). "At summary judgment, qualified immunity shields a law enforcement officer from liability in a § 1983 action unless: (1) the facts viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." *Watson v. Boyd,* 2 F.4th 1106, 1109 (8th Cir. 2021) (internal citation and quotations omitted). As Plaintiff did not dispute any of the summary judgment evidence presented by Separate Defendants here, the Court will first determine whether any of Plaintiff's claims, considering the undisputed facts, rise to the level of a constitutional violation. *See Kulkay v. Roy,* 847 F.35 637, 642 (8th Cir. 2017) (explaining the court may start with either prong of the qualified immunity test and may end the analysis if either is not met).

## A. *Terry* Stop

Plaintiff argues Separate Defendant Brown did not have reasonable suspicion of criminal activity at the Feed Mill to justify coming to the Feed Mill and detaining him. (ECF No. 93). Separate Defendant Brown argues he had reasonable suspicion to detain Plaintiff based on the information he received from Separate Defendant Gulick. (ECF No. 79, p. 3).

A police officer can stop and briefly detain a person for investigatory purposes if the officer has a reasonable suspicion that criminal activity "may be a foot." This is known as a "*Terry* stop." *Terry v. Ohio*, 392 U.S. 1, 30 (1968). To determine whether Defendant had reasonable suspicion to conduct a *Terry* stop, the Court looks at the information Separate Defendant Brown possessed

at the time. *Terry* 392 U.S. at 21-22 (1968). The Court views Separate Defendant Brown's "observations as a whole, rather than as discrete and disconnected occurrences." *Waters v. Madson*, 921 F.3d 725, 736 (8th Cir. 2019). The "determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior." *Illinois v. Wardlow*, 528 U.S.119, 125 (2000).. If a Defendant "lacked reasonable suspicion and thus conducted an unlawful *Terry* stop, he may nonetheless be entitled to qualified immunity if he had arguable reasonable suspicion—that is, if a reasonable officer in the same position could have believed he had reasonable suspicion." *Waters*, 921 F.3d at 736.

Just as explained in the Court's Report and Recommendation on Separate Defendant Oller's Motion for Summary Judgment, Separate Defendant Brown is entitled to rely upon the information provided to him by Separate Defendant Gulick. *See Doran v. Eckold,* 409 F.3d 958, 965 (8th Cir. 2005) (officers may reasonably rely on information provided by other law enforcement individuals). The record is clear that Separate Defendant Gulick called Separate Defendant Brown and provided him with all the information given by Plaintiff's co-worker. While Plaintiff argues the anonymity of the informant should lend to the assumption the information is unreliable, the Court is unconvinced. This informant did not provide their name but did provide their status as Plaintiff's co-worker. This status lends credibility to their knowledge of Plaintiff's activities while working at the Feed Mill. It is also undisputed that Separate Defendant Brown knew of Plaintiff's status as a parolee with a warrantless search waiver on file. (ECF No. 71-1, p. 25). Finally, Defendant Brown was a member of an area wide drug task force.

Therefore, if reasonable suspicion was required to stop and investigate Plaintiff at his workplace for drug related activity, such requirement was satisfied. *See Terry v. Ohio,* 392 U.S. 1 (1968). *See also United States v. Mosley,* 878 F.3d 246, 252-53 (8th Cir. 2017) (reasonable

suspicion may be based on information provided by third parties so long as it bears some indicia

of reliability); *United States v. Maltais,* 403 F.3d 550, 554 (8th Cir. 2005) (holding the basis for

reasonable suspicion of criminal activity to warrant a *Terry* stop is determined in light of the

totality of the circumstances known to the officer).[3]

The Court finds no material issues of fact exist as to Plaintiff's stop claim and such claim

fails as a matter of law.  As the claim did not state a constitutional violation, the Court need not

address the second prong of qualified immunity to determine if the law was clearly established at

the time of the alleged violation.

### B.  Search

Plaintiff next argues Separate Defendant Brown violated his Fourth Amendment rights by

searching him without probable cause or reasonable suspicion.  Separate Defendant Brown argues

his search of Plaintiff did not violate Plaintiff's Fourth Amendment rights because Plaintiff signed

the warrantless search waiver.  The Court agrees Plaintiff's Fourth Amendment rights were not

violated by Separate Defendant Brown's search of Plaintiff's person on October 15, 2019 at the

Feed Mill.

The Fourth Amendment provides for "[t]he right of the people to be secure in their persons,

houses, papers, and effects, against unreasonable searches and seizures[.]"  U.S. Const. amend IV.

To assert a violation of the Fourth Amendment, Plaintiff must possess a legitimate expectation to

privacy.  *United States v. Green*, 275 F.3d 694, 698 (8th Cir. 2001).  "To establish a legitimate

expectation of privacy, [Plaintiff] must demonstrate: (1) a subjective expectation of privacy; and

(2) that this expectation is one that society is prepared to recognize as objectively reasonable."

---

[3] The Court notes it makes no findings or recommendation on whether a warrantless search waiver negates the need for reasonable suspicion to stop Plaintiff, but simply finds the summary judgment record here supports a finding of reasonable suspicion.

*United States v. Muhammad*, 58 F.3d 353, 355 (8th Cir. 1995).  Parolees such as Plaintiff, however, have significantly curtailed expectations of privacy.

The State of Arkansas requires parolees to sign warrantless search waivers.  Specifically, the statute provides as follows:

> (a)(1) A person who is placed on supervised probation or is released on parole under this chapter is required to agree to a waiver as a condition of his or her supervised probation or parole that allows any certified law enforcement officer or Division of Community Correction officer to conduct a warrantless search of his or her person, place of residence, or motor vehicle at any time, day or night, whenever requested by the certified law enforcement officer or division officer.
>
> (2) A warrantless search that is based on a waiver required by this section shall be conducted in a reasonable manner but does not need to be based on an articulable suspicion that the person is committing or has committed a criminal offence.

Ark. Code Ann. § 16-93-106(a)(1)-(2).

The Arkansas Court of Appeals previously held the statute to be constitutional under both the Arkansas and United States Constitutions.  *See Clingmon v. State*, 620 S.W.3d 184, 190 (Ark. App. 2021) (explaining the statutory language is clear that reasonable suspicion is not required and upholding a suspicionless search of a parolee's home).  Moreover, the United States Supreme Court has upheld a similar statute authorizing a suspicionless search of a parolee's person.  In *Samson v. California*, 547 U.S. 843 (2006), the California statute at issue required parolees to "'agree in writing to be subject to search or seizure by a parole officer or other peace officer ..., with or without a search warrant and with or without cause.'"  *Id.* at 846.  The Supreme Court concluded a condition of release could "so diminish or eliminate a released prisoner's reasonable expectation of privacy that a suspicionless search by a law enforcement officer would not offend the Fourth Amendment."  *Id* at 847.  Regarding the expectation of privacy, the Court noted that parole was "an established variation on imprisonment" on which the statute imposed a clearly stated warrantless search condition.  *Id.* at 852.  Therefore, the Court "conclude[d] that petitioner did not

13

have an expectation of privacy that society would recognize as legitimate." *Id.* at 852.  The Court further observed that the State "has an 'overwhelming interest' in supervising parolees because 'parolees ... are more likely to commit future criminal offenses.' " *Id.* at 853 (quoting *Pennsylvania Bd. of Probation and Parole*, 524 U.S. 357, 365 (1998)).  The Court held "the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee." *Id.* at 857.

Here, Plaintiff does not dispute he executed a valid warrantless search waiver as a condition of his parole pursuant to Ark. Code Ann. § 16-93-106(a)(1)-(2).  Such signed waiver is part of the summary judgment record and quoted above.  (ECF No. 71-1, p. 9).  Furthermore, Plaintiff does not dispute his warrantless search waiver mirrors the language held constitutional in *Clingmon* by the Arkansas Court of Appeals, and by the United States Supreme Court in *Samson*.  Accordingly, the Court finds no reasonable suspicion was required to conduct the search of Plaintiff's person at the Feed Mill on October 15, 2019.  Just as in *Clingmon* and *Samson,* Plaintiff agreed in his waiver to be searched at any time by any law enforcement officer without reasonable suspicion.  (ECF No. 71-1, p. 9).  Lastly, as explained in *Samson*, Plaintiff had no reasonable expectation of privacy in his person while on parole and subject to the warrantless search waiver.  *See Samson*,  547 U.S. at 852.

Plaintiff did not offer any facts to distinguish his circumstances from either *Clingmon* or *Samson.*  Instead, Plaintiff cites to *Florida v. J.L.*, 529 U.S. 266 (2000) and *People v. Sanders*, 31 Cal. 4th 318 (Cal. 2003) in support of his contentions that Separate Defendant Brown could not stop him and search him pursuant to his warrantless search waiver for any other purpose than a suspected parole violation.  He further asserts Separate Defendant Brown needed probable cause or reasonable suspicion to stop him at his work to investigate and conduct the search.  However, *Florida v. J.L* does not involve a parolee or a warrantless search waiver.  *Florida,* 529 U.S. at 268.

Instead, it involves only the question of whether an anonymous tip that an unknown individual standing at a bus stop possessed a handgun created sufficient reasonable suspicion to stop and search said individual. *Id.* That set of facts is distinguishable from the facts here. First, and most notably, Plaintiff was known to Separate Defendant Brown as a parolee with an existing warrantless search waiver. (ECF No. 71-1, p. 25). Additionally, while the record is unclear as to the name of the informant it is undisputed that it was a current co-worker of Plaintiff—someone who would have reliable knowledge of Plaintiff's activities while working at the Feed Mill where he was searched.

Furthermore, while the second case cited by Plaintiff, does address the issue of warrantless searches of parolees, the case was decided by the Supreme Court of California. *See People v. Sanders,* 31 Cal. 4th 318 (Cal. 2003). Such decisions are not binding on this Court and are unpersuasive when there exists binding precedent with similar fact patterns such as *Clingmon* and *Samson.* Accordingly, the Court will not rely on *People v. Sanders* herein.

The Court notes Plaintiff also argues his waiver only authorized a warrantless search by his parole officer for parole violations. However, the waiver on its face authorizes any law enforcement officer to search Plaintiff without a warrant at any time, and as explained above, this language has been deemed constitutional by the Arkansas Court of Appeals and the United States Supreme Court.

Finally, Plaintiff argued Separate Defendant Brown cannot use the contraband found during the search to justify the search. The Court agrees. However, Separate Defendant Brown did not need to rely upon the contraband found during the search to validate the search. It is undisputed on the record; Separate Defendant Brown based his search of Plaintiff on Plaintiff's existing search waiver which the Court finds valid herein.

Accordingly, the Court finds no material issues of fact exist as to Plaintiff's search claim and such claim fails as a matter of law. As the claim did not state a constitutional violation, the Court need not address the second prong of qualified immunity to determine if the law was clearly established at the time of the alleged violation.

### C.    Arrest

Plaintiff also claims his arrest violated his Fourth Amendment rights because Separate Defendant Brown had no probable cause to arrest him. Separate Defendant Brown argues the methamphetamines found on Plaintiff's person along with the informant information received were sufficient to establish probable cause to arrest Plaintiff on October 15, 2019. The Court agrees.

"Under the Fourth Amendment, a person has a right to be secure in his person and warrants may not issue but upon probable cause." *Ross v. City of Jackson, Mo.,* 897 F.3d 916, 920 (8th Cir. 2018). "It is well established that a warrantless arrest without probable cause violates an individual's constitutional rights under the Fourth and Fourteenth Amendments." *Joseph v. Allen,* 712 F.3d 1222, 1226 (8th Cir. 2013) (internal quotation marks and citation omitted). However, a false arrest claim under Section 1983 "fails as a matter of law where the officer had probable cause to make the arrest." *Kurtz v. City of Shrewsbury,* 245 F.3d 753, 758 (8th Cir. 2001).

"[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates,* 462 U.S. 213, 232 (1983). The Eighth Circuit has provided a fluid definition to provide some guidance in evaluating the existence of probable cause. Specifically, the Eighth Circuit has stated that "[p]robable cause exists when "the totality of the circumstances at the time of the arrest '[is] sufficient to lead a reasonable officer to believe that the defendant has committed

or is committing an offense." *Borgman v, Kedley,* 646 F.3d 518, 523 (8th Cir. 2011) (quoting *Fisher v. Wal-Mart Stores, Inc.,* 619 F.3d 811, 816 (8th Cir. 2010)). "The substance of all the definitions of probable cause is a reasonable ground for belief of guilt." *Baribeau v. City of Minneapolis,* 596 F.3d 465, 474 (8th Cir. 2010).

"We must give law enforcement officers 'substantial latitude in interpreting and drawing inferences from factual circumstances,' ... but such latitude is not without limits." *Kuehl v. Burtis,* 173 F.3d 646, 650 (8th Cir. 1999) (quoting *United States v. Washington,* 109 F.3d 459, 465 (8th Cir. 1997)). First, evidence tending to "negate the possibility that a suspect committed a crime is relevant" to whether probable cause exists. *Id.* "In this sense, the Fourth Amendment requires that we analyze the weight of all the evidence—not merely the sufficiency of the incriminating evidence." *Id.* Second, "law enforcement officers have a duty to conduct a reasonably thorough investigation prior to arresting a suspect, at least in the absence of exigent circumstances and so long as law enforcement would not be unduly hampered if the agents wait to obtain more facts before seeking arrest." *Id.* (internal punctuation marks and citations omitted).

An officer is entitled to "qualified immunity for a warrantless arrest if the arrest was supported by at least 'arguable probable cause.'" *Jospeh,* 712 F.3d at 1226. "Arguable probable cause exists even where an officer mistakenly arrests a suspect believing it is based on probable cause if the mistake is objectively reasonable." *Id.* (internal quotation marks and citation omitted). The existence of probable cause is a question of law. *Id.* at 1227.

It is undisputed that during the search of Plaintiff a white substance in a clear plastic bag was found in Plaintiff's pocket. This discovery is captured on the body camera footage on the

record.[4]  (ECF No. 71-1, p. 25).  It is also undisputed that Separate Defendant Oller through his experience and education as a drug task force officer concluded that substance to be methamphetamine—an illegal controlled substance—and so informed Separate Defendant Brown. (ECF No. 71-1, 26).  Also on the body camera footage, Plaintiff admitted to using methamphetamines but denied selling methamphetamines.[5]  (ECF No. 71-1, p. 33).  Under Arkansas law, it is unlawful to possess the controlled substance of methamphetamine pursuant to Arkansas Code Annotated Section 5-64-419(b)(1)(A).  Based on the totality of these undisputed circumstances, the Court finds Separate Defendant Brown had probable cause to believe Plaintiff committed a crime under such Arkansas state law and did not violate his Fourth Amendment rights with his arrest.  *See Borgman v, Kedley,* 646 F.3d 518, 523 (8th Cir. 2011).

Accordingly, the Court finds no material issues of fact exist as to Plaintiff's arrest claim and such claim fails as a matter of law.  As the claim did not state a constitutional violation, the Court need not address the second prong of qualified immunity to determine if the law was clearly established at the time of the alleged violation.

---

[4] The Court notes Plaintiff does allege in his Complaint that he did not possess methamphetamines. (ECF No. 9, p. 6).  However, Plaintiff did not dispute the body camera footage showing Separate Defendant Brown pulling the clear bag of white substance from his pocket, (ECF No. 71-1, p. 25), the Arkansas Crime Lab Report determining the white substance was methamphetamine, (ECF No. 71-1, p. 32), or his deposition testimony where he admitted he possessed the methamphetamines, (ECF No. 71-1, p. 7); nor did he reassert his initial allegation that he did not possess the methamphetamines in his Response, (ECF No. 93).  Accordingly, the Court need not consider Plaintiff's original allegation that he did not possess the methamphetamine at the time of his arrest.  *See Scott v. Harris,* 550 U.S. 372, 380 (2007) (explaining, at summary judgment, a court should not adopt the version of events presented by the nonmoving party when that version is blatantly contradicted by video footage on the record).

[5] Specifically, Separate Defendant Oller asked Plaintiff where his pipe was.  Plaintiff responded he did not have a pipe.  Separate Defendant Oller asked Plaintiff how he was smoking the "meth" without a pipe.  Plaintiff responded he used "the paper."  Separate Defendant Oller then asked if he was snorting it.  Plaintiff responded explaining he snorted and smoked the meth.  (ECF No. 71-1, p. 33, time stamp 00:20).

### D.    Imprisonment

Next, Plaintiff claims Separate Defendant Brown falsely imprisoned him.    Separate Defendant Brown argues because he had probable cause to arrest Plaintiff his imprisonment was valid.

The Court finds Plaintiff's false imprisonment claim is simply an extension of his false arrest claim.  Plaintiff does not allege any facts to support a due process claim, but instead goes on to argue that he should not have been imprisoned because Separate Defendant Brown did not have reasonable suspicion to search him or probable cause to arrest him.  (ECF Nos. 9; 93).  As the Court has previously found Plaintiff's claims for illegal search and arrest fail as a matter of law so should his false imprisonment claim.

Furthermore, false imprisonment claims are state law claims and not actionable under Section 1983.  *King v. Beavers,* 148 F.3d 1031, 1034 (8th Cir. 1998) ("False imprisonment is a state law tort claim. It is not coextensive with the Fourteenth Amendment, which 'protects only against deprivations of liberty accomplished 'without due process of law.'" (quoting *Baker v. McCollan*, 443 U.S. 137, 145 (1979))).  As the Court recommends dismissal of Plaintiff's federal claims, it will not exercise supplemental jurisdiction over any pendent state claims raised by Plaintiff.  *See Franklin v. Zain*, 152 F.3d 783, 786 (8th Cir. 1998) (explaining a federal court may decline to exercise supplemental jurisdiction over a pendent state claim if it has dismissed all claims over which it had original jurisdiction under 28 U.S.C. § 1367(c)(3).).

### E.    Official Capacity

Since Plaintiff has failed to state any individual claim against Separate Defendant Brown, he cannot maintain an official capacity claim against Hempstead County, Separate Defendant Brown's employer.  *See Morris v. Cradduck,* 954 F.3d 1055, 1060 (8th Cir. 2020) *Sanders v. City*

*of Minneapolis, Minn.,* 474 F.3d 523, 527 (8th Cir. 2007) (citing *City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986)).  Furthermore, "[c]laims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself."  *Id.*  Plaintiff did not cite or claim any policies or procedures of Hempstead County that violated his constitutional rights.[6]

### IV. CONCLUSION

For the foregoing reasons, I recommend Separate Defendant Brown's Motion for Summary Judgment (ECF No. 78) be **GRANTED** and all claims asserted against Separate Defendant Brown be **DISMISSED with prejudice**.

**Referral Status:  This case should remain referred at this time.**

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger *de novo* review by the district court.**

**DATED** this **11th day of October 2024**.

/s/ *Barry A. Bryant*
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE

---

[6] The Court notes Plaintiff listed the Fifth, Eighth, and Fourteenth Amendments in his Amended Complaint, however, the facts he alleged against Separate Defendant Brown only stated a Fourth Amendment claim.  Accordingly, the Court need not address any additional amendments herein.